UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| NATHAN OWEN TACY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | CIVIL ACTION: 3:12-CV-712-RL-CAN |
| | ) | |
| | ) | |
| NEW ENGLAND COMPOUNDING | ) | |
| PHARMACY, INC., aka NEW | ) | |
| ENGLAND COMPOUNDING CENTER, | ) | |
| AMERIDOSE LLC, and ALAUNUS | ) | |
| PHARMACEUTICAL LLC | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT ALAUNUS
PHARMACEUTICAL'S MOTION TO DISMISS**

Plaintiff, Nathan Tacy, by counsel Law Offices of David W. Holub, PC, respectfully submits the following in response to Defendant's motion to dismiss.

### I. BACKGROUND

The essential allegations pertaining to Alaunus Pharmaceutical, LLC taken from the enumerated paragraphs of the complaint (DOC 1) are:

….

2. The named defendants are manufacturers, sellers, fabricators, suppliers, compounders, promoters and/or distributors of prescription medications commonly referred to as injectable steroids.
3. Defendants are corporations and are or have been jointly engaged in the manufacture, distribution, compounding, promotion, testing, marketing and/or sale of the afore-described medications (more

particularly described in Exhibit A attached)[1] in the State of Indiana. [DOC 1-1 details all of the lot numbers of medications and the precise medications at issue with sufficient particularity for notice pleading.]

4. This litigation stems from the defendants' marketing and selling of a contaminated medication product, and/or failure to warn and/or concealment of the hazards associated with the above-described medications, including but not limited to the propensity upon injection to cause fungal based meningitis and spinal cord and brain damage, including fatal disease complications.

….

5. At all relevant times, defendants knew, or should have known, that injection of its contaminated steroid medications exposed persons such as plaintiff to risk of immediate and/or latent harm or injury to health and life.

6. Notwithstanding this knowledge, said medications have been marketed by the defendants and promoted as a safe and effective steroid based medication to control pain and inflammation.

7. Defendants are believed to have been at all relevant times in control of the design, assembly, manufacture, compounding, promotion, marketing and sale of the subject medications.

8. Notwithstanding the above-described knowledge of health risks, defendants' strategy has been to affirmatively market and sell these products by making assurances to potential users and physicians about the safety of the products and defendants' capability to provide contaminant free products.

9. Defendants successfully marketed the subject medications, including in Indiana, and said marketing campaign consisted of advertisements and promotional literature provided to physicians, which materials overstated defendants' capabilities to provide safe quality products.

10. The above-described advertising program, through misrepresentation and omission, sought to create an image and impression that the medications supplied by defendants were safe to use.

11. Notwithstanding the above-described knowledge of health risks, defendants downplayed and understated the health hazards and risks associated with defendants' ability to safely produce the subject medication in a manner which deceived potential users of the subject medication by promoting the positive aspects of the low pricing of the medication and minimizing and withholding information about the lack of safe production capabilities, and otherwise keeping relevant information from potential users.

12. Defendants, despite having had such knowledge, failed to take reasonable precautions against the injury to plaintiffs and committed negligent and/or reckless acts and/or omissions in breach of their duties of

---

[1] Exhibit A was attached to Plaintiff's filed Complaint as Exhibit A, and can be found in the case docket as DOC 1-1.

  reasonable care owed to plaintiff and in breach of government imposed standards, including but not limited to the following:

a. Failing to exercise ordinary care in the manufacture, sale, testing and quality control of the subject medications by, including but not limited to, delivering said medications accompanied by fungal contaminants;

b. Failing to warn and/or failing to adequately and sufficiently warn of the contamination of said medications and the risk of meningitis, spinal injury, brain damage, and death associated with the aforementioned medications;

c. Placing into the stream of commerce a defective and unreasonably dangerous and contaminated product, namely, the afore-described medications;

d. Failing to meet all appropriate and required conditions, standards, regulations, and requirements for the safe and reliable dispensing of said medications in compliance with purity and hygienic standards and government regulations;

e. Failing to monitor, study, test and discover the full extent of the above-described contamination based health risks before marketing, distributing and selling said medications;

f. Failing to adequately and sufficiently warn, after discovering or after a time in which they should have discovered, those who might dispense said medications by prescription of the contamination and the risks of meningitis, spinal injury, brain damage, and death associated with the aforementioned contaminated medications;

g. Failing to adequately instruct the physicians or other care providers who would be expected to dispense said medications on how to test and check the product for contamination and quality assurance before the use of said medications on patients;

h. Failing to disclose a lack of adequate quality control and testing of the subjection medications and failing to adequately test and control the quality and purity of said medications;

i. Failing to warn of inadequate purity of the quality and purity of the subject medications;

j. Misrepresenting the purity of and/or misrepresenting assurances of the quality and purity of the subject medications;

k. Failing to accompany their product with proper warnings regarding all possible adverse effects associated with the use of the subject contaminated medications and the comparative severity and duration of such adverse effects;

l. Failing to conduct adequate testing and surveillance to determine the safety and contamination free quality of the subject medications;

m. Failing to provide adequate training to and supervision of employees and agents engaged in the production process for said medications, and in particular, the need to control product quality and isolate said product from any and all sources of contamination;

n. Failing to promptly warn plaintiff, and all others similarly situated, after the sale of the subject medication of a post-sale determination of

3

contamination of said medications and a need for immediate medical monitoring to ensure prompt detection of dangerous effects.

13. As a direct, foreseeable and proximate result of defendants' aforesaid misconduct, plaintiff has suffered damages, including but not limited to, development of meningitis, the plaintiff's exposure to immediate and latent adverse health effects and increased medical expenses and medical monitoring expenses to deal with latent health risks, the suffering of emotional distress and traumatic changes to plaintiff's way of life, the incurring of medical expenses for care, testing and treatment, and suffering of mental and physical pain, the suffering of a loss of time, a loss of earnings, disfigurement and deformity, fright, humiliation and mental anguish, and impairment to plaintiff's earning capacity as a result of plaintiff's injuries.

14. At all times relevant herein the defendants have been oppressive and reckless with conscious disregard for the consequences to plaintiff.

….

16. Defendants have violated various State and Federal permits, standards, regulations, licenses, conditions, requirements and/or orders and have done so despite knowing of said violations.

17. Defendants, by the same acts and/or omissions as outlined herein, have violated provisions of 21 U.S.C., including but not limited to, §§301-360, et seq., and all regulations deriving therefrom, and any and all other applicable Federal, Indiana, or Massachusetts regulations.

….

19. Defendants should be held strictly liable for their failures associated with the use of said medications as delineated herein, all of which proximately harmed plaintiff.

20. Defendants should be held strictly liable for their failure to adequately warn or instruct users and/or prescribing physicians of the risks of meningitis, spinal injury, brain damage, death, and other risks from the injection of the aforementioned medications.

21. The defendants placed the subject medications into the stream of commerce in a defective and unreasonably dangerous condition wherein the foreseeable risks exceeded the product design benefits.

22. The defendants' subject medications, when placed in the stream of product commerce, were unreasonably dangerous, carried inadequate and defective warnings, were inadequately tested and were unreasonably promoted as safe yet cost effective.

….

23. Defendants, in the marketing/distribution and sale of the aforementioned medications, expressly and/or impliedly warranted that said medications were of merchantable quality, safe and fit for the purposes of their intended use.

24. Defendants expressly warranted that the subject medications were safe for use.

25. The plaintiff reasonably relied upon the skill and judgment of defendants that the subject medications were of merchantable quality and safe and fit for their intended use.

26. Defendants breached said express and implied warranties by marketing medications that were unfit and unsafe for their intended use and in the ways previously described.

….

28. Defendants, in the marketing/distribution and sale of the aforementioned medications, negligently withheld and/or misrepresented to plaintiff, plaintiff's physician, and State and Federal regulatory agencies, information pertaining to the contaminant free status of said medications.

….

30. At all times relevant hereto, defendants Ameridose LLC, and Alaunus Pharmaceutical LLC, are and were organized and operated as the alter ego of defendant New England Compounding Pharmacy Inc., aka New England Compounding Center, for the benefit and advantage of the alter egos, and at all times relevant thereto the alter egos exercised dominion and control over New England Compounding Pharmacy Inc., aka New England Compounding Center, and said corporate defendants New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC, have so intermingled their business affairs, each with the other, that all of said corporate entity defendants are the alter egos of each other.

31. At all times relevant hereto, New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC, were at all relevant times operated jointly, and all such businesses were, and are, operated as a joint venture and/or in concert with each other.

32. The defendant corporations New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC are in substance the same, and that the defendant corporations are but the alter egos of each other, acting solely as a device to cause harm or prejudice to the creditors of the corporations.

33. Given the scope of the harm caused by defendants, the defendant corporations are virtually insolvent and may be closing business, and plaintiff therefore invokes the trust fund doctrine and alleges that the officers and directors are in a fiduciary relationship with and owe a fiduciary duty, to plaintiff and to all other creditors.

34. The officers and directors should hold the corporate assets in trust for plaintiff and for the corporate creditors and this duty obliges

> them to administer corporate assets for the benefit of plaintiff and other creditors.
> 35. If the officers and directors have allowed the corporate assets to become dissipated, such conduct would be a breach of a fiduciary duty and they are therefore liable to plaintiff for such breach.
> 36. The officers and directors of defendant corporations participated in, were aware of, and acquiesced in the deceptive and manipulative practices of, the defendant corporations as delineated in this complaint, and are jointly and severally liable for their acts.
> 37. At all times relevant hereto, the defendants New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC have engaged in a joint venture in the marketing and distribution of the steroid medications which are the subject of this litigation.

(DOC 1, Plaintiff's Compl.)

Plaintiff maintains that Defendant's motion to dismiss should be denied for the reasons that follow.

## II.  ARGUMENT

### A.  *Applicable Legal Standard for Motions Pursuant to 12(b)(6)*

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted."  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Federal pleadings practice requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this requirement as imposing two easy-to-clear hurdles. *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' Second, its allegations must plausibly suggest that the

6

plaintiff has a right to relief, raising the possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 n.14 (2007)).

### B.  Counts I - V

The Indiana Product Liability Act has been interpreted to provide for a single cause of action when a plaintiff seeks to recover from a manufacturer for physical harm caused by its product.  *Cincinnati Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 4:05CV49, 2006 US Dist. Lexis 9807 (N.D. Ind. Feb. 7, 2006).  As such, some courts have not permitted plaintiffs to bring their strict liability and negligence claims independently.  *Id.* (*citing Tungate v. Bridgestone Corp.*, NO. IP 02-0151-C H/K, 2004 US Dist. Lexis 6289 (S.D. Ind. March 26, 2004).  However, Plaintiff's claim against Alaunus should not be dismissed, but rather any separate demarcation of "claims" should not be an impediment to a suit against Alaunus; instread, all said paragraphs should be merged (notwithstanding labels of negligence, strict liability, warranty, contract) to form one products liability claim under the Indiana Product Liability Act.  *Tungate*, *supra* at *17.

In other words, ignoring the labeling of claims and arbitrary separation of "counts", paragraphs 1- 28, get Plaintiff over the low hurdles noted above and "describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and further "plausibly suggest[s] that the plaintiff has a right to relief, raising the possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 n.14 (2007)).

Alaunus' Memorandum (Doc 22) sets out a laundry list of information that it contends must be in a complaint under notice pleading. However, its laundry list is more descriptive of

7

information of the type and nature that is more typically disclosed in discovery and after the issues are closed on the merits. While Alaunus in undoubtedly entitled to discovery, it is not entitled to have the Plaintiff's case dismissed under Rule 12(b)(6). For example, since the filing or Plaintiff's complaint in State Court, he has been able to determine specific information about the two contaminated injections he received, and is prepared to disclose same in discovery (or in an amended complaint if the Court would so prefer), but at the time of the filing of the complaint the essential facts known included that the he was deathly ill, that his doctor had injected him with medications identified on the recall list, and that his illness was linked to contaminants identified to be in the recalled medications. (Doc 1). Similarly, lab testing results are now available identifying the specific contaminants found in his spinal fluid that correlate to the medications recalled as identified in Exhibit A to the Complaint. (Doc 1-1).

Setting aside the legal technicalities of pleading a case in court, it would seem that if a recall notice provides sufficient information for doctors, hospitals and patients to react to the described danger, then referencing same and incorporating same in a pleading ought to put a defendant sufficiently on notice of the nature of the legal claim that it must defend itself against.

For the above noted reasons, paragraphs 1 – 28 state a valid claim against Defendant Alaunus under the Indiana Product Liability Act and the Motion to Dismiss should be DENIED.

### C.  *Count VI – Joint Venture, Alter Ego*

Defendant argues that Count VI of the Complaint (paragraphs 30 – 37) should be dismissed because Alaunus believes that these paragraphs do not state a reasonable inference of liability against it.  Here are the key allegations from paragraphs 30 - 37 with the essential material in bold:

> 30.　At all times relevant hereto, defendants Ameridose LLC, and **Alaunus Pharmaceutical LLC, are and were organized and operated as the alter ego of**

8

**defendant New England Compounding Pharmacy Inc.**, aka New England Compounding Center, for the benefit and advantage of the alter egos, and at all times relevant thereto **the alter egos exercised dominion and control over New England Compounding Pharmacy Inc**., aka New England Compounding Center, and said corporate defendants New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC, **have so intermingled their business affairs, each with the other, that all of said corporate entity defendants are the alter egos of each other**.

31. At all times relevant hereto, New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC, were at all relevant times **operated jointly, and all such businesses were, and are, operated as a joint venture and/or in concert** with each other.

32. The defendant corporations New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC **are in substance the same**, and that the defendant corporations are but the alter egos of each other, acting solely as **a device to cause harm or prejudice to the creditors** of the corporations.

33. Given the scope of the harm caused by defendants, the defendant corporations are **virtually insolvent and may be closing business**, and plaintiff therefore invokes the trust fund doctrine and alleges that the **officers and directors are in a fiduciary relationship** with and owe a fiduciary duty, to plaintiff and to all other creditors.

34. The officers and directors should hold the corporate assets in trust for plaintiff and for the corporate creditors and this **duty obliges them to administer corporate assets for the benefit** of plaintiff and other creditors.

35. If the officers and directors have allowed the corporate assets to become dissipated, such conduct would be a **breach of a fiduciary duty** and they are therefore liable to plaintiff for such breach.

36. The officers and directors of defendant corporations **participated in, were aware of, and acquiesced in the deceptive and manipulative practices** of, the defendant corporations as delineated in this complaint, and are jointly and severally liable for their acts.

37. At all times relevant hereto, the defendants New England Compounding Pharmacy Inc., aka New England Compounding Center, and affiliated companies Ameridose LLC, and Alaunus Pharmaceutical LLC **have engaged in a joint venture in the marketing and distribution of the steroid medications** which are the subject of this litigation.

In short, Alaunus is put on notice that Plaintiff claims it has been operating as a joint venture with the other defendants, is an alter ego of the other defendants, that the operation is designed to prejudice creditors, that directors and officers owe a fiduciary duty to Plaintiff which they have breached, and that for the good of creditors, corporate fictions ought to be disregarded.

9

Again, paragraphs 30 - 37, get Plaintiff over the low hurdles noted above and "describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and further "plausibly suggest[s] that the plaintiff has a right to relief, raising the possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 n.14 (2007)).

As this Court is aware of its own docket, and is following the MDL and the NECC Bankruptcy, the court is aware that some approximately $21 million dollars has been ordered clawed back from officers and others that NECC paid out before filing bankruptcy. Further, the State of Massachusetts is investigating Alaunus for the precise claims noted in Count IV. *See* New England Compounding Center (NECC) *Preliminary Investigation Findings - Board of Registration in Pharmacy Report,* http://www.mass.gov/eohhs/docs/dph/quality/boards/necc/necc-preliminary-report-10-23-2012.pdf page 9.

The law is that when one corporation is organized and controlled and its affairs conducted so that it is a mere instrumentality or adjunct of another corporation, the corporate veil may be pierced, or the fiction of separate corporations may be disregarded. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996); *Aronson v. Price*, 644 N.E.2d 864, 867 (1994), *rehearing denied*; *Smith v. McLeod Distributing, Inc.*, 744 N.E.2d 459, 462 (Ind. Ct. App. 2000); *Eden United, Inc. v. Short*, 573 N.E.2d 920, 932 (Ind. Ct. App. 1991); *Extra Energy Coal Co. v. Diamond Energy and Resources, Inc.*, 467 N.E.2d 439, 441 (Ind. Ct. App. 1984); *Clarke Auto Co. v. Fyffe*, 116 N.E.2d 532, 535 (App. Ct. 1954) *citing to Trustees System Co., of Pennsylvania v. Payne*, 65 F.2d 103 (3d Cir. 1933).

A piercing of the veil can also be imposed when there is: (1) evidence of perpetration of a fraud or wrong by the parent corporation through its subsidiary; and (2) unjust loss or injury to the claimant. *Eden*, 573 N.E.2d at 932.  Corporations that are acting as the same entity are not to be recognized as separate entities. *McLeod*, 744 N.E.2d at 462.  In order to determine whether piercing the corporate veil is appropriate, the entire relationship between the corporate entities should be reviewed. *McLeod*, 744 N.E.2d at 462; Eden, 573 N.E.2d at 932.

The corporate veil may also be pierced or the separation of corporations disregarded when the corporations are manipulated or controlled as one enterprise to cause illegality, fraud, or injustice or to permit one entity to escape liability for an operation by one corporation that benefits the entire enterprise. *Eden*, 573 N.E.2d at 933.

In order to pierce the corporate veil, several factors should be considered when looking for indications of common identity, excessive fragmentation, or single business enterprise corporations:

> a. intermingling of business transactions, functions, property, employees, funds, records and corporate names in dealing with the public; *Secon Service System, Inc. v. St. Joseph Bank and Trust Co.*, 855 F.2d 406, 414 (7th Cir. 1988).
> b. the interdependence of the corporations for supply and demand;
> c. the failure to observe formalities of separate corporate procedures for each corporation or to document transfers of funds; *Secon*, 855 F.2d at 414.
> d. inadequate financing of one corporation as a separate unit from the point of view of meeting it normal obligations, either because of inadequate financing initially or because its earning have been drained off to keep it in a condition of financial dependency; and
> e. the direction of company policies of one corporation primarily toward the interests of an affiliate.

*See generally*, *Smith v. McLeod Distributing, Inc.*, 744 N.E. 2d 459, 462-463 (Ind. Ct. App. 2000); *Eden United, Inc. v. Short*, 573 N.E.2d 920, 933(Ind. Ct. App. 1991).

11

While the plaintiff has the burden of proof when attempting to pierce the corporate veil, a notice pleading complaint does not have to itemize and detail all proof. The Count VI claim should be held valid and Plaintiff should be permitted to conduct discovery, with said discovery to include the several factors noted below:

    a.    undercapitalization[2];
    b.    absence of corporate records;
    c.    fraudulent representation by corporate shareholders or directors;
    d.    use of the corporation to promote fraud, injustice, or illegal activities
    e.    payment by the corporation of individual obligations;
    f.    commingling of assets and affairs;
    g.    failure to observe required corporate formalities[3];
    h.    other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form;
    i.    whether similar corporate names were used;
    j.    whether there were common principal corporate officers, directors, and employees[4];
    k.    whether the business purposes of the corporations were similar[5]; and
    l.    whether the corporations were located in the same offices and used the same telephone numbers and business cards[6].

See generally, *National Soffit and Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 265-266 (7th Cir. 1996); *Aronson v. Price*, 644 N.E.2d 864, 867 (1994); *Smith v. McLeod Distributing, Inc.*, 744 N.E.2d 459, 463 (Ind. Ct. App. 2000); See also *Arnold v. Browne*, 27 Cal. App. 3d 386, 394-395 (Cal. Ct. App. 1972) (setting out a more extensive list of factors that can be considered); See also *Amfac Mechanical Supply Co. v. Federer*, 645 P.2d 73, 77-78 (Wyo. 1982) (setting out a more extensive list of factors that can be considered).

---

[2] *Secon Service System, Inc. v. St. Joseph Bank and Trust Co.*, 855 F.2d 406, 414 (7th Cir. 1988).
[3] *Secon*, 855 F.2d at 414.
[4] *McLeod*, 744 N.E.2d at 463.
[5] *McLeod*, 744 N.E.2d at 463; see also, *Extra Energy Coal Co.*, 467 N.E.2d at 441.
[6] *McLeod*, 744 N.E.2d at 463; see also, *Extra Energy Coal Co.*, 467 N.E.2d at 441.

Under notice pleading, Plaintiff has provided adequate notice to Defendant of the type of claim it must defend against in Count VI, and the Motion to Dismiss should be DENIED as to said Count.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court deny Defendant's Motion to Dismiss Plaintiff's Complaint.

        Respectfully Submitted,

        LAW OFFICES OF DAVID W. HOLUB, P.C.

        /s/David W. Holub
        DAVID W. HOLUB, #8220-64
        Attorney for Plaintiff
        8403 Merrillville Road
        Merrillville, IN 46410
        (219) 736- 9700

CERTIFICATE OF SERVICE:   I hereby certify that on the 18th day of February, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing all counsel of record.

        /s/David W. Holub
        DAVID W. HOLUB, #8220-64